## Star Brewery Company v. William Primas.

1. INJUNCTION—*To Restrain the Violation of Covenants in a Deed.*— A deed of conveyance contained a negative covenant, stating that "the premises hereby conveyed are not to be used for saloon or dram shop purposes." *Held*, that an injunction will lie to prevent a breach of the covenant, although such breach might occasion no substantial damages, and although such damages are recoverable at law.

2. COVENANTS—*Touching the Use of Land Conveyed.*—The owner of land selling or leasing it, may insert in his deed or lease such conditions and covenants as he sees fit, touching the mode of enjoyment and use of the land.

**Bill for Injunction,** to restrain the breach of a covenant. Appeal from the Circuit Court of Madison County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the February term, 1895. Affirmed. Opinion filed July 1, 1895.

KNISPEL & ROPIEQUET, attorneys for appellant.

TRAVOUS & WARNOCK and M. MILLARD, attorneys for appellee.

MR. JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

This suit was brought to restrain the use of certain property contrary to the terms of the deed of conveyance.

The appellee was the owner of a saloon building and premises he had purchased from one Anna Hanslick, situated in Glen Carbon, known as the Bluff saloon, which, in February, 1891, he leased to one William Winters, who ran the saloon until November, 1891, when appellee leased it to the St. Louis Brewing Association, who sub-let to the firm of Martin & Paul for saloon purposes, and they so used it. On the 18th day of August, 1891, the appellee sold and conveyed to William Winters a vacant lot, situated near the said Bluff saloon, which deed contained the following clause: " The premises hereby conveyed are not to be used for saloon or dram shop purposes so long as the grantor owns the house formerly owned by Hanslick." Winters

proceeded to erect a large house on said lot, which was afterward, in May and June, 1892, used by him for saloon purposes, but he was restrained from continuing in the business on the complaint of the St. Louis Brewing Association and Martin & Paul, with whom Winters had contracted, on their purchase of his fixtures in the Bluff saloon, not to keep a saloon within one mile of the Bluff saloon. The Star Brewery Company desired to purchase the Winters property for the purpose of establishing a saloon, and having learned of the restrictive clause in the deed conveying it to Winters, sought to obtain a written release from appellee, which he refused to give. Winters also sought to obtain such release and offered to pay $30 therefor, but appellee unqualifiedly refused to grant it. Notwithstanding this refusal the Star Brewery Company purchased the property of Winters on the 20th day of May, 1893, and established one Johnson in the saloon business there in July thereafter. On the 13th of September the bill in this case was filed by appellee to restrain such use of the property, he still remaining the owner of the Bluff saloon. On hearing, the injunction was maintained and defendants appealed.

The evidence discloses that appellee knew Winters and Johnson ran a saloon on the premises, in violation of the terms of the deed, and that he patronized the saloon; it also tends to show that he told the agent of the brewery company, before the purchase of the property from Winters, that he would not object to its use for saloon purposes, although he refused to sign a release of the terms of the deed. The evidence on this point, however, is not satisfactory that he gave such consent verbally. There was some talk on the part of the agent that the restriction amounted to nothing, and the language of appellee, taken in connection therewith, might well be held to mean, " if that is so, then go ahead." We do not find there was a waiver of the restriction. It is not natural that appellee should, unqualifiedly and firmly, on different occasions, after earnest persuasion and the offer of a money consideration, refuse to release such restriction in writing, and at the same time, verbally consent to release

the same without any consideration, when the tendency would be to depreciate the rental value of his property.

The appellee is a German and does not talk the English language very well, but he is not accused of being dull in money matters.

The evidence shows the tendency of appellant's saloon would be to take trade away from the Bluff saloon, owing to its location and the course of travel.

The only question in the case is as to the rights of appellee to enforce the terms of the deed. The fact there were only two saloons in Glen Carbon at the time the deed was made, an 1 there were nine when this bill was filed, is immaterial.

The terms are plain and explicit. They are negative in character. In Consolidated Coal Co. v. Schmisseur, 135 Ill. p. 378, it is said: "It seems to be well settled that where there is an express negative covenant, courts of equity will entertain bills for injunction to prevent their breach, although the same will occasion no substantial injury, or though the damages, if any, be recoverable at law. This is upon the principle that the owner of land, selling or leasing it, may insert in his deed or contract just such conditions and covenants as he pleases, touching the mode of enjoyment and use of the land."

The decree is affirmed.